No. 12,868.

WAGNER ET AL. *v.* HELDT ET AL.
(26 P. [2d] 813)

Decided October 23, 1933.

Mr. C. M. ROLFSON, Mr. G. E. HENDRICKS, Mr. PHILIP HORNBEIN, for plaintiffs in error.

Mr. T. E. MUNSON, Mr. JOHN P. BECK, for defendants in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

WHAT purports to be the last will of Hans Heldt was admitted to probate by the county court of Sedgwick county. Peter Heldt and Margrethe Amussen, defendants in error here, claiming to be the sole heirs at law of the decedent, thereafter filed their petition in the county court asking that the probate of the will be set aside upon the grounds which will be hereinafter more particularly mentioned, but the county court dismissed their petition and thereupon confirmed and ratified its previous probate of the will. Upon an appeal to the district court of Sedgwick county from the adverse judgment of the county court, the district court, upon the issues joined in the pleadings of the respective parties, found from the evidence produced, that the testator did not know at the time he signed the alleged will what it contained, and also found that the will was not executed, published or declared as required by statute, and, therefore, adjudged the will to be void and not entitled to be admitted to probate. It is from the adverse decision of the district court that Wagner, and Charles and L. E. Petersen, plaintiffs in error here, proponents of the will, are prosecuting this writ of error for a review of the judgment of the district court.

Counsel for the opposing parties in their respective briefs are not in entire accord as to what the record discloses to be the evidence in the case upon which the findings were adverse to the proponents. We have, therefore, resorted to the transcript of the record and read the same and are satisfied that, upon the issues of fact joined in the pleadings, the responsive evidence thereto fully sustains the findings and judgment of the trial judge, which, as stated, are adverse to the proponents.

There is more or less conflict as to some of the evidence, but not as to what we deem the controlling facts in the case. The trial judge, however, sitting as a trier of facts, heard the testimony and observed the witnesses as they testified and was, therefore, in a better position

than are the members of this court to determine their credibility. Plaintiff in error Wagner, who wrote the will, is the principal legatee therein, receiving, if the will is held valid, at least one-half of the estate, and it would seem that he, rather than the Petersens, is the litigant who is prosecuting this writ of error and is the one who has the largest financial interest in the result of the litigation.

The important question is as to the meaning and effect of section 13, chapter 194, page 709, S. L. 1923, which reads: "Any will, by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and either be signed by the testator (or by someone for him in his presence and by his direction) in the presence of two or more credible witnesses, or the signature to which shall be acknowledged by the testator in the presence of two or more credible witnesses. In addition to such signing or acknowledgment, the testator shall, in the presence of said witnesses, declare said writing to be his last will and testament, and said witnesses, at his request, in his presence and in the presence of each other, shall attest the same by subscribing their names thereto."

The alleged maker of this will, Hans Heldt, had been seriously ill for several weeks before that instrument was executed. It bears date November 17, 1928, and purports to have been then signed by the testator in the presence of O. C. Hildebrand, Charles E. Deming and W. F. Leslie, whom the testator is said to have requested to attest the same as subscribing witnesses. The attestation clause reads as follows: "The foregoing instrument typewritten upon one sheet of paper and without erasures or interlineations, was subscribed, published and declared by Hans Heldt as and for his Last Will and Testament, in our presence and in the presence of each other, and we, at the same time, at his request, in his presence and in the presence of each other, hereunto

subscribed our names and residences as attesting witnesses this 17th day of November, A. D. 1928.''

■■ This clause was subscribed by the three attesting witnesses. Apparently there was an attempt in the execution of the will to comply with the provisions of section 13 above quoted. Without attempting to give the exact language employed by the witnesses of the respective parties, it is sufficient to say that as to whether or not the provisions of this section were complied with, the evidence is in conflict. This is the most favorable view in favor of the proponents of the will that can be taken. The trial judge saw these witnesses as their testimony was given and was better able than we are to pass upon their intelligence, their integrity and the weight of their testimony. In such circumstances under the prevailing rule of this court we would not be justified in setting aside the findings of fact. The testimony of these three attesting witnesses is not in all respects harmonious. They were selected, not by Heldt, the testator, but by Wagner, the principal beneficiary in the will. One of them was his partner in a warehouse business which he was conducting in the town of Julesburg. The other two witnesses were his employees. There is no evidence at all, either direct or by inference, that the testator even suggested to Wagner that these three witnesses should attest his proposed will by subscribing their names thereto.

■ But, in our view, there is another and, of itself, a fatal objection to the probate of this document offered as the last will of Hans Heldt. The concluding sentence of section 13 above quoted is in the following language: ''In addition to such signing or acknowledgment, the testator shall, in the presence of said witnesses, declare said writing to be his last will and testament, and said witnesses, at his request, in his presence and in the presence of each other, shall attest the same by subscribing their names thereto.'' There is no evidence even tending to show that the testator either by words or by conduct

declared the writing in question to be his last will and testament, or that he even knew that the instrument in question purported to be his will, and the testimony is conflicting as to the other provisions that go to make up a proper attestation of subscribing witnesses to a will. If we resort to the testimony of the attesting witnesses, no aid is given to the contention of the proponents that the maker either directly or indirectly made any request whatever of them or either of them to sign the attestation clause. Indeed, he said not a word about a will. They all testify that Wagner, the principal beneficiary, was the one who asked them to sign as witnesses, and do not intimate that the testator did so directly or indirectly. One of the subscribing witnesses testified that no part of the will itself was read, though the attestation clause was read, which was denied by other witnesses, and that so far as he knew Heldt, the alleged maker, did not know what was in the will.

Counsel for contestants say in their brief that the section of our statute of 1923 is found in no other state except in Montana, and the Montana statute has been construed in the case of *In Re Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013. The evidence in the Noyes case discloses that there were two alleged witnesses to the will there under consideration and both of them were not present in the room at the same time when the will was read to the testator and that the latter did not speak to either of them during that time nor did he personally request them to sign the will. There was a request made by the man who drew the will. This state of facts is almost the precise case we are now considering. The language of the Montana statute in question reads: "The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will." The Montana court held that inasmuch as this section of the statute was not complied with, the probate of the will was improper. *Twilley v. Durkee,* 72 Colo. 444, 211 Pac. 640, is also in point.

It seems to us too clear for argument that if we should sustain this will as having been properly executed by the testator, or attested by the subscribing witnesses, we would be absolutely annulling the section of the 1923 statute above quoted.

In addition to this there are a number of circumstances which the evidence discloses showing that Wagner, who drew the will, though not a lawyer, and although he was a friend of the alleged testator, took advantage of the illness of the latter to obtain by this will the larger part of the estate. The testator was, and for several weeks had been, a seriously sick man and died a short time after the will was executed. The contestants are residents of Germany and are blood relations of Hans Heldt. Charles Nagel, who is named as the executor of the will, himself testifies that this will was not drawn in accordance with the desire and intention of the testator which were expressed and made known to him just a short time before the will was drawn. Nagel testifies, and in this he is corroborated by Mr. and Mrs. McKellips, with whom Heldt was living at the time the alleged will was executed, that Mr. Heldt said to Mr. Nagel in effect that he wished to have his will redrawn because he wanted to make provisions therein for Mr. and Mrs. McKellips, at whose home he was living at the time of his last illness and death, and who attended to his wants and cared for him during the closing days of his life. Mr. and Mrs. McKellips, who were present at the time that Wagner, with his attesting witnesses, came to their home where Hans Heldt was lying ill at the time, testified, in substance, that during the entire time that Wagner and his witnesses were present when this will was signed, Heldt said nothing whatever concerning a will; that he spoke not a word and never indicated by word or action that he knew he was signing a will. There is nothing whatever to show that the testator knew the contents of the alleged will or that he ever, in any way, requested either of the subscribing witnesses to attest the same by sub-

scribing their names as witnesses thereto. The most that can be said in favor of the proponents of the will is that the evidence in some particulars is in conflict. The district judge had superior facilities for passing upon the credibility of the witnesses. He saw them and heard them testify and he was abundantly justified in the finding which he made that the testator did not know what he was signing, and it is altogether conclusive, as we read the evidence, that he never made any request whatever of these subscribing witnesses to attest this alleged will and it is equally clear that he did not know its contents.

As tending to show what is required as to the execution and attesting of a will under our statute, we have a decision of this court that throws light upon the subject. In the case of *Wehrkamp v. Burnett,* 82 Colo. 5, 256 Pac. 630, this court indicated what would be and is, among other things, an essential requirement as to the execution and attestation of a will. At pages 6 and 7 is the following: "It appears, however, that the will was drawn at his [the testator's] request and written by a stenographer in his presence, and was then and there in the hearing of the witnesses read over to him with care, received his approval and thereupon there was a short discussion as to who should sign as witnesses, and one Buckles, who had drawn the will, and one Kinkade, both of whom had been present during the whole transaction, were agreed upon; then Greiner [the testator] signed it in their presence and they in his." The mere reading of this excerpt from the court's opinion shows how fatally defective was the alleged execution and attestation of this alleged will of Hans Heldt. It would have been entirely within the prevailing rule of this jurisdiction to have disposed of this controversy by the mere statement that the material facts involved were in dispute and that the conflict was resolved by the trial court in favor of the contestants. The record as made by the proponents themselves showed a lack of compli-

ance with the essential provisions of our statute concerning the execution and attestation of wills.

The judgment of the district court is affirmed.

Mr. Chief Justice Adams and Mr. Justice Hilliard concur.