**Frank KREITH, Plaintiff-Appellant,**

v.

**UNIVERSITY OF COLORADO, Jack Kent Anderson, Richard J. Bernick, Fred M. Betz, Jr., Peter C. Dietze, Byron L. Johnson, Sandy F. Kraemer, Rachel B. Noel, Roy H. Shore, David K. Sunderland, Members of its Board of Regents, Arnold Weber, President of the University of Colorado, and Russell Nelson, Chancellor of the University of Colorado, Defendants-Appellees.**

No. 82CA0263.

Colorado Court of Appeals,
Div. II.

July 26, 1984.

Rehearing Denied Aug. 23, 1984.

Bragg & Dubofsky, Frank N. Dubofsky, Boulder, for plaintiff-appellant.

Richard A. Tharp, Sp. Asst. Atty. Gen., Boulder, for defendants-appellees.

KELLY, Judge.

The plaintiff, Frank Kreith, appeals the judgment dismissing his complaint praying for a declaratory judgment that he is a tenured faculty member at the University of Colorado and for issuance of an injunction requiring the University to restore him to a teaching position. Kreith argues, among other things, that the trial court erred in ruling that the power to accept his tendered offer of early retirement was properly delegated by the board of regents to administrative officials of the University. We disagree and therefore affirm.

The trial court found the following facts. Kreith was a tenured member of the University of Colorado faculty and had been on leave without pay during the academic years 1977–1978 and 1978–1979 in order to hold the senior engineering research posi-

tion at the Solar Engineering Research Institute (SERI) in Golden, Colorado.

On November 1, 1978, Kreith received a letter from Dr. Fred Ramirez, Chairman of the Department of Chemical Engineering, and William J. Pietenpol, Dean of the College of Engineering, informing him of their decision to deny further leave and to require Kreith to choose between his faculty position and his position at SERI. Kreith requested another year's leave of absence.

Several letters were exchanged and negotiations were pursued between Kreith and administrative officers of the University with no resolution of the parties' differences. On August 18, 1979, Kreith notified Ramirez of his decision to choose early retirement and to request Professor Emeritus status. Pietenpol accepted Kreith's request in a letter dated August 29.

On September 12, 1979, Kreith addressed a letter to Dr. Byron Johnson, a member of the board of regents, withdrawing his offer for early retirement upon the condition that his request for leave be granted. On September 25, pursuant to Johnson's suggestion, Kreith notified Pietenpol and other University officials of his desire conditionally to withdraw the early retirement offer. Further communications and negotiations ensued between Kreith and University officials, in which the University, through its Vice Chancellor for Academic Affairs and Dean of Faculties, reaffirmed its acceptance of Kreith's early retirement. On November 29, the board of regents, pursuant to the November 15 recommendation of the Chancellor, approved by the President, voted favorably on Kreith's early retirement and appointment to Professor Emeritus status.

■ There being support in the record for these findings, we are bound by them on review. *Muhe v. Mitchell,* 166 Colo. 108, 442 P.2d 418 (1968); *Trustees of State Normal School v. Wightman,* 93 Colo. 226, 25 P.2d 193 (1933).

■ Relying on § 23–20–112, C.R.S., and *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976), which limits

to the board of regents the exclusive authority to appoint faculty members, Kreith argues that the same limitation applies to resignations and retirements. It is his position that the power to accept resignations and retirements is vested in the board of regents only and is non-delegable. We disagree.

Section 23–20–112, C.R.S., authorizes the board of regents to:

"enact laws for the government of the university; appoint the requisite number of professors, tutors, and all other officers; and determine the salaries of such officers and the amount to be paid for tuition in accordance with the level of appropriations set by the general assembly for the university. It shall remove any officer connected with the university when in its judgment the good of the institution requires it."

In interpreting this legislative provision in *University of Colorado v. Silverman, supra,* our Supreme Court held that the power to hire teachers, since it involves considerable judgment and discretion, may not be delegated without the express authorization of the General Assembly. *See Big Sandy School District v. Carroll,* 164 Colo. 173, 433 P.2d 325 (1967).

Resignation and retirement, however, are distinguishable from appointment or hiring. Implicit in the hiring of faculty are decisions of educational policy concerning the future of the institution. Acceptance of offers of resignation or retirement do not have a similar impact upon institutional policy except as they necessitate the employment of replacement faculty. Since the appointment of future faculty resides in the exclusive power of the board of regents, continuity of policy is assured.

■ Further, the governing board of an educational institution may adopt a general rule and expressly incorporate it in an employment contract, thereby authorizing the president, or other named officials of the institution, to accept resignations on behalf of the board. *See Trustees of the State Normal School v. Wightman, supra.* The

board of regents has adopted such a rule here. *See Laws of the Regents, Appointments A(2)*, Art. X(1). Since the trial court found on supporting evidence that the procedures established by rule had been followed in this case, we conclude that there has been no error.

The judgment is affirmed.

BERMAN and BABCOCK, JJ., concur.